# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JESSICA COOPER, DANIEL KUJAWA, PHILIP RINELLA, MELISSA RUMPF, and MATTHEW WILDER, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>     v.<br><br>ENDURANCE DEALER SERVICES, LLC, and ENDURANCE WARRANTY SERVICES, LLC,<br><br>     Defendants. | Case No.: 1:25-cv-02919<br><br>**CLASS ACTION** |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS THE CLASS ACTION COMPLAINT**

## INTRODUCTION

Defendants Endurance Dealer Services, LLC and Endurance Warranty Services, LLC (collectively, "Endurance") sell aftermarket warranty coverage for automobile repairs to retail consumers. Endurance makes a host of promises that ostensibly offer consumers "peace of mind" with a "stress-free claims process" that takes as "little as 48 hours." Based on such representations, Plaintiffs paid Endurance thousands of dollars for coverage and, when their vehicles needed repairs, they submitted claims as instructed. Plaintiffs allege that, despite them fulfilling their obligations, Endurance's business practices rely on undisclosed tactics to avoid fulfilling their obligations. The motivation for this is clear: the more claims Endurance denies, the more their bottom line grows. As a result, Plaintiffs paid for warranty contracts that were not worth the paper it was printed on and they were forced to pay thousands of their own money for repairs that Endurance was required to cover. Plaintiffs' experiences are not outliers. The Complaint details scores of consumers complaining of Endurance's tactics used to delay and deny coverage.

Endurance now moves to compel arbitration and dismiss the Complaint (the "Motion"), seeking to continue its profit generating scheme and avoid any accountability. The Motion, like its promised warranty coverage, comes up short. This is not the typical consumer arbitration scenario. Plaintiffs did not sign any contracts with Endurance and were *never* informed of any arbitration clauses. Endurance also relies on website agreements that they cannot prove Plaintiffs ever assented to, or agreements with third parties that Endurance cannot enforce. Endurance is obviously capable of sending contracts to consumers and requesting signatures prior to the sale, but it foregoes this simple practice so that it can turn around and enforce materially unconscionable terms that the consumer does not see before paying Endurance for its illusory coverage. Endurance's substantive arguments in support of dismissal fail too, as they rely on disputed facts viewed in its own favor. Endurance has not met its burden, and its Motion should be denied.

1

## FACTUAL BACKGROUND

The Plaintiffs are residents of Ohio, Michigan Pennsylvania, Texas, and New Jersey. Dkt. 1 ¶¶ 12, 26, 40, 55, 69 (the "Complaint," and cited herein as "¶_"). Each purchased a Vehicle Service Contract ("VSC") from Defendants ranging from $2,500 to $6,500, experienced covered mechanical issues with their vehicles, and submitted a coverage claim to Endurance that was either partially denied, entirely denied, or Defendants have refused to issue a decision on the claim at all. ¶¶ 14-20, 29-34, 45-49, 60-63, 74-79. Plaintiffs were tricked into purchasing worthless VSCs, causing them to incur thousands of dollars in additional out-of-pocket losses. ¶¶ 24, 38, 53, 67, 84.

The Complaint alleges, in detail, Endurance's fraudulent scheme related to its sale and administration of its VSCs. Central to this Motion, Plaintiffs allege that Endurance aggressively advertises itself as providing "complete coverage you can count on," purporting to be the direct administrator for VSCs, and promising that if you pay Endurance thousands of dollars for a VSC, you will "never pay for covered car repairs again." *E.g.*, ¶¶ 101, 108. The Complaint reproduces Endurance's advertisements verbatim. ¶¶ 108-122. Once consumers pay Endurance for the VSCs (commonly over the telephone), when the time comes for Endurance to provide the advertised coverage, it engages in a pattern of tactics to delay and deny claims. ¶¶ 123-142. As a result, consumers, like Plaintiffs, incur thousands of dollars in out-of-pocket expenses. ¶¶ 144-148.

## LEGAL STANDARDS[1]

On a motion to dismiss, a court "construe[s] [the complaint] in the light most favorable to the nonmoving party, accept[s] well-pleaded facts as true, and draw[s] all inferences in her favor." *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility

---

[1] Citations omitted and emphasis added throughout, unless stated otherwise.

2

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

When asked to compel arbitration, the party seeking to compel arbitration bears the initial burden to show that an arbitration agreement exists. *Gilbert v. I.C. Sys.*, 2021 U.S. Dist. LEXIS 16279, at *5-6 (N.D. Ill. Jan. 28, 2021). If the movant meets this standard, the opposing party must identify a triable issue of fact on the purported arbitration agreement. *Id.* "Like summary judgment, the court views the evidence in the light most favorable to the non-moving party and draws reasonable inferences in its favor." *Id.*

## ARGUMENT

### I. The VSC Arbitration Clauses Are Unconscionable and Unenforceable.

The arbitration clauses included in the VSCs are unconscionable and cannot be enforced. "Like other contracts… an arbitration agreement 'may be invalidated by a state law contract defense of general applicability, such as fraud, duress, or unconscionability.'" *Bain v. Airoom, LLC*, 2022 IL App (1st) 211001, ¶ 21 (2022). "[U]nconscionability may be based on either procedural or substantive unconscionability, or a combination of both." *Kinkel v. Cingular Wireless, LLC*, 223 Ill. 2d 1, 21 (2006). "'Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed.'" *Bain*, 2022 IL App (1st) 211001, ¶ 25 (quoting *Kinkel*, 223 Ill. 2d at 28). A contract is substantively unconscionable if: (i) its "terms are so one-sided that they oppress or unfairly surprise an innocent party;" (ii) there is "an overall imbalance in the obligations and rights imposed by the bargain;" or (iii) a "significant cost-price disparity" exists. *Turner v. Concord Nursing & Rehab. Center, LLC*, 2023 IL App (1st) 221721, ¶ 20 (2023). Procedural unconscionability "consists of some impropriety during the process of forming the contract depriving a party of a meaningful choice." *Kinkel*, 223 Ill. 2d at 23. Courts consider whether there is an unequal bargaining power and other "circumstances surrounding the

3

transaction," such as "whether each party had a reasonable opportunity to understand the terms of the contract," "whether important terms were hidden in a maze of fine print," and "the conspicuousness of the clause and the negotiations relating to it." *Kinkel*, 223 Ill. 2d at 24. "[C]ourts are more likely to find unconscionability when a consumer is involved and has 'no hand in [the] drafting' of the agreement, when there is a disparity in bargaining power, and when the agreement is on a preprinted form." *Hwang v. Pathway LaGrange Prop. Owner, LLC*, 2024 IL App (1st) 240534, ¶ 16 (2024).[2] Here, the VSC arbitration provisions are substantively and procedurally unconscionable.

### A. The One-Way Arbitration Clauses Included in Cooper's and Wilder's VSCs Are Substantively Unconscionable.

Cooper's and Wilder's VCAs contain arbitration clauses that are *entirely* one-sided in Endurance's favor. Cooper and Wilder are barred from seeking judicial relief in any court for "any claim," while Endurance is free to bring any claim it wishes against Plaintiffs in court, and can force Plaintiffs to arbitrate their claims against it. Dkt. 4 at 19 of 37, Dkt. 4-4 at 12 of 25. Where, such as here, the "obligation to arbitrate is entirely one-side[d]" and "forc[es] [plaintiffs] to arbitrate almost all of their claims," it "supports a finding of substantive unconscionability." *Hwang*, 2024 IL App (1st) 240534, ¶ 18 (collecting cases); *see also Vassilkovska v. Woodfield Nissan, Inc.*, 358 Ill. App. 3d 20, 28-29 (2005) (finding defendant's promise to arbitrate was an "empty one" even though defendant "'waive[d]…all rights to pursue any legal action in a court of law,'" because it "retain[ed] the right to sue the plaintiff [in court] for a laundry list of reasons"). The VSC arbitration clause is also substantively unconscionable for the independent basis that it

---

[2] Defendants invoke the application of Illinois law to the VSCs, which Plaintiffs do not contest. *See Emplrs. Mut. Cas. Co. v. Skoutaris*, 453 F.3d 915, 923 (7th Cir. 2006) ("As this case is brought under diversity jurisdiction, we apply the law of the forum state, Indiana, since neither party has challenged the district court's choice of law.").

4

grants Endurance the sole authority to select *any* method of adjudication (*i.e.*, arbitration or mediation), *any* forum (the only vague limitation is that it is with a "recognized" organization), and the applicable rules. *See Bain*, 2022 IL App (1st) 211001, ¶ 30 (finding arbitration provision allowing one party "in its sole discretion" to choose the "forum and set of procedures" was substantively unconscionable).

Endurance's argument that "Illinois law does not require mutuality of arbitration agreements" side-steps unconscionability. Mot., 4. Endurance relies on *Bishop v. We Care Hair Dev. Corp.*, 316 Ill. App. 3d 1182, 1198 (2000),[3] but the court clarified that *Bishop* "ask[ed] only whether a contract was supported by mutual promises, regardless of whether the obligations imposed on both parties were identical ones." *Hwang*, 2024 IL App (1st) 240534, ¶ 20. "Thus, an agreement may be supported by consideration yet be substantively unconscionable." *Hwang*, 2024 IL App (1st) 240534, ¶ 20. Accordingly, the arbitration clauses included in Cooper's and Wilder's VSCs are substantively unconscionable and unenforceable.

### B. The VSC Arbitration Clauses Are Procedurally Unconscionable.

Not only are the VSC arbitration clauses substantively unconscionable, they are also unenforceable because they are procedurally unconscionable. "[I]n order to be a part of the parties' bargain, a[n] [arbitration] provision must be bargained for, brought to the [consumer's] attention[,] or conspicuous.'" *Kinkel*, 223 Ill. 2d at 24. If these elements are not found, such as here, the contract term may be procedurally unconscionable. *Id*. The VSCs are not signed by Plaintiffs and Endurance did not provide Plaintiffs with copies of the VSCs until they agreed to them by phone. Plaintiffs' Declarations, Exs. 1-4, ¶¶ 3-5. What's more, Endurance never mentioned the arbitration provision when selling the VSCs and Plaintiffs had no ability to negotiate the contract of adhesion

---

[3] Endurance also cites *Williams v. TCF Nat'l Bank*, 2013 U.S. Dist. LEXIS 28074, at *34 (N.D. Ill. Feb. 26, 2013) which relies on *Bishop*.

which was only presented to them after they purchased the VSCs—at which point, the arbitration clauses were still not conspicuously noticed. *Id*.[4]

Accordingly, the arbitration clauses included in the VSCs are procedurally unconscionable to such a great extent that they are unenforceable based on procedural unconscionability alone.

**II.     The Click-wrap Agreements Are Unenforceable.**

Endurance cannot force Rinella, Rumpf, and Cooper into arbitration based on "click-wrap" they purportedly agreed to by obtaining free quotes from Endurance or on a third-party website. Mot., 5-6, 9. Endurance's argument should be rejected for all three Plaintiffs.

***First***, Endurance tacitly admits that Cooper did not agree to any arbitration provision or class action waiver with *Endurance*. Mot., 6. Cooper clicked a button to obtain a *quote* from "shopcarwarranty.com." The terms and conditions ("T&C") of that website state that if there are any links to websites that are not shopcarwarranty.com's, then the "rights to such content will be governed by the terms of those third-party websites." *Id.* According to Defendants, this means that "Cooper agreed to Endurance's [T&C], which include an agreement to arbitrate her claims." *Id.* Fatal to Endurance's argument, however, is that it does not establish that Cooper either accessed Endurance's website or even agreed to shopcarwarranty.com's T&C.

Arbitration agreements are subject to basic contract formation requirements, including an

---

[4] Further, unlike in Rinella's VSC which identifies the "ARBITRATION" clause, the arbitration clauses in Cooper's and Wilder's VSCs are hidden under the broad headings "LEGAL CLAIMS AND DISPUTES" and "ALTERNATIVE DISPUTE RESOLUTION." Dkt. 4 at 19 of 37. The clauses are not noted in Cooper's and Wilder's VSCs until they appear on page 15 of 19 under these general headers in small, unhighlighted texts. *See Tortoriello v. Gerald Nissan of N. Aurora, Inc*., 379 Ill. App. 3d 214, 234 (2008) (finding "the arbitration clause, ensconced in one of several paragraphs in a page of densely packed, minute print, was not conspicuous by any reasonable measure"). Notably, many portions of the VSC are conspicuously identified with larger fonts, capitalization, underlining, and bolding, and combinations of each—yet Endurance clearly intended that consumers would not so identify the arbitration provisions. Dkt. 4-4 at 6 of 25 (capitalizing, bolding, and underlining "waiting period" terms); *id*. at 11 of 25 (using larger font, bolding, and underlining to warn "Pre-Existing conditions are not covered"); *id*. (instructing consumers "NO CLAIMS WILL BE PAID WITHOUT PRIOR AUTHORIZATION" on every page of VSC).

offer, acceptance, and consideration.[5] *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 712 (7th Cir. 2019). While Endurance categorizes the T&C as a "clickwrap agreement," where typically "users are required to click on an 'I agree' box after being presented with a list of terms," it is better categorized as a "browsewrap agreement" or a "hybridwrap agreement." *Anand v. Heath*, 2019 U.S. Dist. LEXIS 109076, at *7 (N.D. Ill. June 28, 2019). A browsewrap agreement is "where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen." *Id.* A "hybridwrap agreement" "prompt[s] the user to manifest assent after 'merely present[ing] the user with a hyperlink to the terms and conditions, rather than displaying the terms themselves.'" *Id.* Regardless of the type, a meeting of the minds cannot be accomplished if the party has not been made aware of the terms. *Id.*; *Zelina v. Hillyer*, 846 N.E.2d 68, 70-72 (Ohio Ct. App. 2005).

There was no meeting of the minds between Endurance and Cooper because *Endurance's T&C were never presented to Cooper*. Exhibit D allegedly depicts Cooper's interactions with shopcarwarranty.com. On the final page, the website states the following in (very) small text:

> "By clicking the form or by clicking on the 'Get My Free Quote Now' button above or buttons that carry the same meaning, you expressly consent to receive communications from us, our partners, and their dealers regarding their products, devices, or services, by email, text message or phone (including via automatic telephone dialing systems) to the landline or mobile number provided even if that telephone number is on a corporate, state, or national Do Not Call Registry. You do not have to agree to receive such calls or messages as a condition of receiving any devices, services, or products from us or our partners and dealers. For more information, see our Privacy Policy."

---

[5] Defendants apply Illinois law to their analysis likely under the belief that the Illinois choice of law provision T&C on Defendants' website is valid and enforceable. Plaintiffs disagree the T&C applies, but do not contest the application of Illinois law, as the basic law regarding contract formation is not materially different across states. *Randolph v. Dillard's, Inc.*, No. 1:24-cv-10084, 2025 U.S. Dist. LEXIS 62131, at *4 (N.D. Ill. Apr. 1, 2025) ("Although the parties disagree on which state law applies, in cases like this one involving whether an agreement to arbitrate has been formed, the analysis 'calls for the application of general rules of contract formation, so the choice of law is not likely to affect the outcome.'").

Nowhere was Cooper provided with shopcarwarranty.com's T&C, nor did she ever affirmatively agree to be bound by them. More importantly, nowhere does Endurance establish that Cooper had notice of, was provided a copy of, or agreed to *Endurance's* T&C.[6]

***Second***, the Plaintiffs clicked a button that merely stated either "Get My Free Quote Now" (Cooper) or "Get a FREE Quote" (Rinella and Rumpf). An invitation to receive a free quote is not an offer that Plaintiffs could have accepted for a multitude of reasons.[7] Cooper was shopping on a third-party website, and thus had no idea who would eventually contact her to discuss a potential car warranty, and none of the Plaintiffs received anything in writing after clicking the button but before verbally purchasing their VSCs. Exs. 1-4, ¶¶ 3-5. Rinella and Rumpf clicked a button on Endurance's website that states: "GET YOUR FREE QUOTE. Simply fill out the information below and we will follow up fast with your free, no-obligation quote." Thus, by clicking to get their free quote, there was "no obligation" for Rinella and Rumpf at all, including no obligation to arbitrate any claims.[8] As such, simply clicking to get a "free quote" does not provide reasonable notice that any subsequent agreement to verbally purchase a VSC from Endurance would be

---

[6] Implicit in Endurance's argument is that Cooper was *never* presented with or agreed to *its* T&C, because it would have lumped Cooper in with the arguments it makes regarding Rinella and Rumpf if so.

[7] *BorgWarner PDS Irapuato, S. de R.L. de C.V. v. Parker Hannifin Corp.*, 2025 U.S. App. LEXIS 12313, at *17 (6th Cir. May 19, 2025) ("If the quote is sent without language saying that an offer is being made and that the buyer merely needs to accept it, it is probably not an offer"); *Eureka Res., LLC v. Howden Roots LLC*, 553 F. Supp. 3d 233, 241 (M.D. Pa. 2021) ("The general rule is price quotations are not offers"); *Cleary v. Am. Airlines, Inc*., 2022 U.S. Dist. LEXIS 184667, at *18 (N.D. Tex. July 22, 2022) ("Advertising and promotion of a product is nothing more than an invitation to apply, not an offer that becomes a contract upon acceptance. . . The advertisement invites people to apply. It does not guarantee that their application for a partner credit card will be accepted").

[8] Even if clicking to get the free quote constituted acceptance of a contract, such a contract would also fail for lack of consideration as Plaintiffs provided no payment information and received no benefits for clicking the button. *Gallagher v. Hearthside Realty, Inc.*, 221 A.3d 1237 (Pa. Super. Ct. 2019); *Maverick Nat'l Res., LLC v. Glenn D. Cooper Oil & Gas, Inc*., 2024 Tex. App. LEXIS 4140, at *6-7 (Tex. App. June 13, 2024); *Clotz v. Mason Cos.*, 2024 U.S. Dist. LEXIS 37863, at *4-5 (N.D. Ohio Mar. 5, 2024) (observing "Defendant . . . never received any payments . . . [and] no consideration ever changed hands.'").

governed by Defendants' "Privacy Policy and [T&C]" that applied to their request for a quote. *See, e.g.*, *Sgouros v. TransUnion Corp.*, 817 F.3d 1029 (7th Cir. 2016) ("A website might be able to bind users to a service agreement by placing the agreement, or a scroll box containing the agreement, or a clearly labeled hyperlink to the agreement, next to an 'I Accept' button that unambiguously pertains to that agreement").[9]

The "hybridwrap agreement" in *Anand*, 2019 U.S. Dist. LEXIS 109076, at *11 is instructive. There, the website at issue contained a "continue" button that immediately above stated "I understand and agree to the Terms & Conditions which includes mandatary arbitration and Privacy Policy." *Id.* at *3. The court noted that while the plaintiff clicked "continue," the website did not "include language explaining that clicking the 'Continue' button would constitute assent to the terms and conditions or that continuation was conditioned on such assent." *Id.* at *12. Ultimately, the court held that "there was no language that linked the notice regarding mandatory arbitration or the terms and conditions to the 'Continue' button, and Anand was permitted to click the 'Continue' button to continue through the site without expressly manifesting her assent." *Id.* at *15. Here, Endurance has failed to establish that the Plaintiffs assented to the arbitration clause in the VSCs simply by obtaining free quotes. Plaintiffs signed up for their VSCs verbally, did not sign or otherwise endorse or agree to the arbitration provision during those calls, and thus the arbitration clauses are unenforceable. Exs. 1-4, ¶¶ 3-5.

### III. Defendants Cannot Enforce Plaintiffs' Contracts with MEPCO.

Endurance asserts that Kujawa, Wilder, and Cooper all "agreed to a broad class waiver" based on a separate financing agreement with a third-party entity, MEPCO. Mot., 9. The entity that provided Plaintiffs with the payment plan is identified as "SING For Service, LLC d/b/a Mepco."

---

[9] In fact, the video exhibits submitted for Rinella and Rumpf also cut off the text underneath the quote button, and thus fail to demonstrate that any notice regarding the T&C's was actually provided.

9

*See, e.g.*, Dkt. 4-1, at 30. In relevant part, it states: "This Payment Plan Agreement ('Agreement') is between *Purchaser* and . . . *Mepco*." *Id.* The Agreement further states that, for all of the terms included in the contract, only "the Purchaser and MEPCO acknowledge and agree as follows". *Id.*[10] Endurance's own case makes clear that New York only allows a third party to enforce a contract "when it is . . . clear ***from the language of the contract*** that there was 'an intent to permit enforcement by the third party.'" *Comm'r of the Dep't of Soc. Servs. of the City of N.Y. v. N.Y.-Presbyt. Hosp.*, 82 N.Y.S.3d 390, 394 (App. Div. 1st Dept. 2018); *Premium Mortg. Corp. v. Equifax Info. Servs., LLC*, 583 F.3d 103, 108 (2d Cir. 2009).

Here, there is no provision of the Agreement that permits enforcement by Defendants. The Agreement only imposes duties on "the Purchaser and MEPCO." Dkt. 4-1, at 30. The purpose of the contract is as follows: "Purchaser promises to pay to MEPCO, on behalf of MEPCO, the Balance of Sales Price and all Applicable Charges shown under the Payment Plan Terms, subject to the Provisions of this Agreement." *Id.* at 32. The only provision of the Agreement that relates to third-party enforcement is assignment, which allows MEPCO to assign or pledge its rights. *Id.* at 33. As such, there was no intent to permit Endurance to enforce the Agreement with MEPCO.

**IV.     Defendants' Unripe and Premature Rule 23 Arguments Fail.**

Endurance's attempt to dismiss the class allegations pursuant to Rule 12(b)(6) is procedurally improper, unripe, and based on a poor reading of the Complaint. Rule 23 is merely a procedural device and not a "claim for relief" that can be dismissed under Rule 12(b)(6). Insofar as Endurance sought to move to strike the class allegations under Rule 12(f), "such motions are 'disfavored and fall under the purview of Rule 23 rather than Rule 12(f).'" *Hughes v. Circle K*

---

[10] The Payment Plan Agreements contain a New York choice of law clause, which Plaintiffs do not dispute governs the Court's interpretation of those Agreements, because Plaintiffs actually signed them.

*Stores, Inc.*, 740 F. Supp. 3d 721, 726 (C.D. Ill. 2024).[11]

Endurance's attempt to have the Court decide Rule 23 matters based on "the complaint and exhibits attached thereto" alone "do[es] not allow the Court to conduct the 'rigorous analysis' required under Rule 23." *Murdock-Alexander*, 2016 U.S. Dist. LEXIS 160616, at *14-15. At this stage, a class definition suffices if it "provide[d] fair notice to Defendant of the kind of class [a] Plaintiff seeks to certify, as necessary under Rule 8(a)(2)." *McClaine v. DX Enters.*, 2024 U.S. Dist. LEXIS 148038, at *20 (S.D. Ill. Aug. 19, 2024). Importantly, Endurance does not argue that it does not have fair notice of the class; rather it argues that the definition is "overbroad," which does not carry at this stage.

Endurance argues that the class definition is "overbroad" because it purportedly includes "everyone who ever purchased an Endurance VSC, regardless of the type of contract…." Mot., 11. But whether a class is "overbroad" naturally requires a factual analysis of the claims, which is not appropriate at this nascent stage of the litigation. *Bietsch v. Sergeant's Pet Care Prods.*, 2016 U.S. Dist. LEXIS 32928, at *39-40 (N.D. Ill. Mar. 15, 2016) ("Although the class definition may need additional refinement as discovery progresses, the Court will not strike the class allegations at this stage, where it adequately provides Sergeant's with notice of the class Plaintiffs will seek to certify, is definite, and is based on objective criteria"); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012) (an overbroad class "can and often should be solved by refining the

---

[11] "This is, in part, 'because plaintiffs generally have the burden of demonstrating that they meet the requirements of Rule 23. Class action defendants, however, are often in control of the information plaintiffs need to meet that burden. Thus, discovery is often appropriate, even necessary.'" *Murdock-Alexander v. Tempsnow Empl. & Placement Servs., LLC*, 2016 U.S. Dist. LEXIS 160616, at *9 (N.D. Ill. Nov. 21, 2016). Further, unlike a Rule 23 motion where plaintiffs bear the burden of showing a class is certifiable, "where the plaintiffs have not yet had the benefit of class discovery, the defendant bears the burden of proving the proposed class is not certifiable." *Hughes*, 740 F. Supp. 3d at 724-25.

11

class definition rather than by flatly denying class certification on that basis").[12]

Regardless, the class definition is not overbroad. Plaintiffs allege that they and all other Endurance consumers "paid for a Vehicle Service Contract that does not provide the promised coverage that was the basis of the bargain." ¶ 10. The Article III injury occurred at the time of sale as a result of Defendant's deceptive and fraudulent conduct and affects all Endurance customers. *See Asad v. Hartford Life Ins. Co.*, 116 F. Supp. 2d 960, 963 (N.D. Ill. 2000) ("The harm alleged is that the policy was not what Hartford represented at the policy's inception"); *Morrison v. Potective Life Ins. Co.*, 2012 U.S. Dist. LEXIS 135145, at *10 (N.D. Ill. Sept. 21, 2012) (same). Plaintiffs need not include a specific time period within the class definition. *See Ruffin v. Exel Direct, Inc.*, 2009 U.S. Dist. LEXIS 89579, at *10 (N.D. Ill. Sept. 29, 2009).

Finally, Plaintiffs may plead a Rule 23(b)(2) class where they seek monetary and injunctive relief. *Marshall v. Grubhub Inc.*, 2021 U.S. Dist. LEXIS 184291, at *23 (N.D. Ill. Sept. 27, 2021) (denying motion to strike Rule 23(b)(2) allegations; noting "[t]o determine whether Marshall can support the need for injunctive relief… will require a more complete factual record."). Endurance's claim that Plaintiffs "plead no basis for injunctive or declaratory relief" is a selective reading of the Complaint, which details a widespread corporate practice of deceiving consumers into purchasing VSCs through various promises and subsequently failing to honor such promises. ¶¶ 100-148. Further, Plaintiffs and all other Endurance customers that still own VSCs face risk of further damages as a result of Endurance's practices designed to delay and deny coverage. Accordingly, Plaintiffs' claims seeking declaratory relief or corrective action for improper business practices are ideally situated for Rule 23(b)(2) certification. *See Van Vels v. Premier Ath. Ctr.*, 182

---

[12] Indeed. the only two cases Endurance cites in support are class certification decisions, which were decided after discovery was conducted—not in a motion to dismiss. *See* Mot. at 10 (citing *Kohen v. Pac. Inv. Mgmt. Co. & PIMCO Funds*, 571 F.3d 672 (7th Cir. 2009); *Oshana v. Coca-Cola Co.*, 472 F.3d 506 (7th Cir. 2006)).

12

F.R.D. 500, 512 (W.D. Mich. 1998) (certifying 23(b)(2) class relating to defendants' failures to provide contracted services (health club facilities) and the failure to disclose financial charges).

## V. Plaintiffs' Fraud Claims (Counts III & IV) are Pled with Particularity.

Plaintiffs' fraud claims satisfy Rule 9(b).[13] "A complaint that provides a 'general outline of the fraud scheme' sufficient to 'reasonably notify the defendants of their purported role' in the fraud satisfies Rule 9(b)." *Cowen v. Lenny & Larry's, Inc.*, 2017 U.S. Dist. LEXIS 169929, at *6 (N.D. Ill. Oct. 12, 2017). Again, Endurance ignores whole sections of the Complaint to argue that Plaintiffs fail to allege the "what," "when," and "where," including "specific statements [or] dates." Mot., 12. Its position stems from an "erroneously… rigid view of the [who, what, when, where, and how] formulation" of Rule 9(b). *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011).[14]

The Complaint details Endurance's fraudulent scheme to induce customers to purchase expensive VSCs through material omissions, misleading representations, and outright lies, followed by a business practice of wrongfully delaying and denying coverage. ¶¶ 3-9, 100-148. The Complaint includes Endurance's statements (with citations) touting the VSCs and Endurance's business practices, including promising coverage "at any licensed repair facility," covering vehicles with over 200,000 miles, a "stress-free claims process" that takes as "little as 48 hours," and being the direct administrator of the VSCs. *Id.* And Plaintiffs allege that they purchased VSCs

---

[13] Endurance includes two passing sentences about consumer protection statutes being subject to Rule 9(b). Mot. at 13. This argument is waived because it is undeveloped and removed from the rest of the section which seeks dismissal of only Counts III and IV. *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021). Regardless, Plaintiffs' statutory claims are based on deceptive, unconscionable, and unfair conduct. *See e.g,* ¶¶ 214, 236, 246, 248-51, 268-69. Thus, these claims are not subject to Rule 9(b). *See Kaschak v. Bankers Healthcare Grp., LLC*, 2024 U.S. Dist. LEXIS 75505, at *34-35 (N.D. Ill. Apr. 25, 2024); *Katz v. Live Nation, Inc.*, 2010 U.S. Dist. LEXIS 60123, at *14 (D.N.J. June 17, 2010); *In re Rutter's Data Sec. Breach Litig.*, 511 F. Supp. 3d 514, 540 (M.D. Pa. 2021).

[14] *See also U.S. ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018) (Rule 9(b) just asks plaintiffs to write "the first paragraph of any newspaper story.").

based on Endurances' "advertisements and representations that [their] vehicle would be covered by the contract in the event it needed repairs, particularly for the parts listed on Endurance's website" detailed in the Complaint. *Id.*, ¶¶ 17, 22, 29, 36, 45, 51, 60, 65, 74, 82. At no point in time, in any of its advertisements or communications did Endurance disclose the truth of its business practices. Such allegations suffice to show the "what, when, and where" formulation of Rule 9(b). *See Zingerman v. Nissan N. Am., Inc.*, 2015 U.S. Dist. LEXIS 51339, at *17 (N.D. Ill. Apr. 20, 2015) ("Nissan (the 'who') made specific misrepresentations regarding the availability and capabilities of the Q50's InTouch system (the 'what') via press releases, advertisements, vehicle inserts, and its website (the 'where' and 'how'). Zingerman also gave dates for the press releases and alleged that he was aware of InTouch's promised capabilities before he purchased a Q50 (the 'when')."); *Melcher v. Cent. States Enters., LLC*, 2023 U.S. Dist. LEXIS 54931, at *23 (N.D. Ind. Mar. 30, 2023) (Rule 9(b) satisfied where "Plaintiff has alleged the general scheme to defraud by Shepherd, the category of contracts that are the subject of the scheme (accumulator contracts), and the misrepresentations (fictitious promises to deliver grain).").

Finally, Endurance's argument that Counts III and IV are duplicative of Plaintiffs' breach of contract claim also fails because Endurance's fraudulent misrepresentations and omissions were made before Plaintiffs entered into the VSCs. *Five-Star Audiovisual, Inc. v. Unique Bus. Sys. Corp.*, 2025 U.S. Dist. LEXIS 37350, at *20 (N.D. Ill. Mar. 3, 2025); *Dyson, Inc. v. Syncreon Tech. (Am.), Inc.*, 2019 U.S. Dist. LEXIS 114960, at *16 (N.D. Ill. July 11, 2019); Complaint ¶¶ 5-8, 101-105, 112-113, 116. Thus, Counts III and IV are not duplicative of Plaintiffs' contract claim.[15]

---

[15] *See e.g.*, *Dyson, Inc.*, 2019 U.S. Dist. LEXIS 114960, at *16 (finding allegations that defendant "misrepresent[ed] its experience in retail logistics and its existing technological capacity" were distinct from breach of contract claims); *Five-Star Audiovisual, Inc.*, 2025 U.S. Dist. LEXIS 37350, at *23 (denying dismissal under *Greenberger* because "[a]llegations that UBS overstated its experience and capabilities to induce Five-Star to enter into a contract are independently actionable as fraud claims, separate and apart from any ultimate breach of the resulting contract.").

14

## VI. The Economic Loss Doctrine Does Not Bar Plaintiffs' Claims for Negligent Misrepresentation (Count V).

The economic loss doctrine does not preclude claims where fraudulent inducement is adequately alleged. *Intermatic Inc. v. J. Baxter Brinkmann Int'l Corp.*, 2011 U.S. Dist. LEXIS 117018, at *6-7 (N.D. Ill. Oct. 11, 2011); *Hodell-Natco Indus. v. SAP Am., Inc.*, 2010 U.S. Dist. LEXIS 143144, at *35-36 (N.D. Ohio Sept. 2, 2010); *Francis v. GM, LLC*, 504 F. Supp. 3d 659, 687 (E.D. Mich. 2020); *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 355 F. Supp. 3d 582, 591 (E.D. Mich. 2018). Here, Plaintiffs plead that Endurance's negligent misrepresentations "induce[d] Plaintiffs and the Class to purchase a Vehicle Service Contract," and, as such, their claims fall within this exception to the economic loss doctrine. ¶¶ 200-202.

## VII. Plaintiffs' Unjust Enrichment Claim Is Properly Pled in the Alternative.

Endurance moves to dismiss Plaintiffs' unjust enrichment claims on the basis of the existence of an express contract. Mot., 14. It overlooks, however, that pleading alternative claims is permitted. *See* Fed. R. Civ. P. 8(a)(3). Plaintiffs' plead the unjust enrichment claim "in the alternative to Plaintiffs' contract-based claims." ¶ 167. *Convoy Servicing Co. v. Trailmobile Trailer*, 234 F. Supp. 2d 826, 832 (N.D. Ill. 2002) ("As plaintiff points out, even if there is an express contract, plaintiff can plead in the alternative. Fed. R. Civ. P. 8(e)(2). Plaintiff cannot recover under inconsistent theories, but may plead inconsistent theories in the alternative").

## CONCLUSION

Plaintiffs respectfully request that the Court deny Defendants' Motion. If the Court determines that the Complaint is deficient in any manner, Plaintiffs respectfully request leave to amend pursuant to Fed. R. Civ. P. 15(a)(2).

Dated: June 20, 2025            By: */s/ Elizabeth A. Fegan*

                                 Elizabeth A. Fegan
**FEGAN SCOTT LLC**
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Phone: 312.741.1019
Fax: 312.264.0100
beth@feganscott.com

Jonathan D. Lindenfeld (*Pro Hac Vice*)
**FEGAN SCOTT LLC**
305 Broadway, 7th Floor
New York, NY 10007
Phone: 332.216.2101
Fax: 312.264.0100
jonathan@feganscott.com

Joseph G. Sauder
Matthew D. Schelkopf
Joseph B. Kenney
**SAUDER SCHELKOPF LLC**
1109 Lancaster Avenue
Berwyn, PA 19312
Phone: (888) 711-9975
Fax: (610) 421-1326
jgs@sstriallawyers.com
mds@sstriallawyers.com
jbk@sstriallawyers.com

16