## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

JESSICA COOPER, DANIEL KUJAWA,
PHILIP RINELLA, MELISSA RUMPF,
MATTHEW WILDER, JOHN BOULLIE, and
DANIEL MOORE, individually and on behalf
of all others similarly situated,

        Plaintiffs,

        v.

ENDURANCE DEALER SERVICES, LLC,
and ENDURANCE WARRANTY
SERVICES, LLC,

        Defendants.

Case No.: 1:25-cv-02919

**CLASS ACTION**

Judge Robert W. Gettleman

---

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND PARTIALLY DISMISS THE FIRST AMENDED COMPLAINT

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

LEGAL STANDARDS .................................................................................................................... 3

ARGUMENT ................................................................................................................................... 4

    I.     Endurance cannot compel Plaintiffs Rumpf or Boullie to arbitrate their claims. ......... 4

        A.   This Court should deny Endurance's improper attempt to relitigate its motion to compel arbitration against Rumpf based on evidence Endurance chose not to rely upon previously. .................................................................................................... 4

        B.   Endurance has not established that Boullie assented to its website's T&C. ............... 6

        C.   The Endurance website's T&C arbitration provision was superseded by the arbitration clause contained in the VSCs. .................................................................... 8

            1.    The VSC and T&C contain irreconcilably conflicting arbitration provisions.... 9

            2.    Under Coinbase, the Court must resolve the conflicting agreements ............... 10

            3.    The VSC superseded the website T&C under traditional contract principles .. 10

            4.    The VSCs' arbitration provision cannot be overridden by the website T&C. ...... ................................................................................................................................ 12

    II.    Plaintiffs Boullie and Rumpf may litigate their claims on a classwide basis. ............ 13

    III.   Plaintiffs' Class Definition is proper. ........................................................................ 14

    IV.   Plaintiffs Moore, Rumpf, and Boullie are adequate Class Representatives. .............. 18

CONCLUSION .............................................................................................................................. 20

## TABLE OF AUTHORITIES

**Cases**                                                     **Page(s)**

*Aeroground, Inc. v. CenterPoint Properties Tr.*,
738 F.3d 810 (7th Cir. 2013) ...............11

*Allen v. Travel Guard Grp., Inc.*,
683 F. Supp. 3d 1164 (W.D. Wash. 2023) ...............12

*Am. Council of the Blind of Metro. Chi. V. City of Chicago*,
589 F. Supp. 3d 904 (N.D. Ill. 2022) ...............20

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) ...............4

*Bazemore v. Jefferson Capital Sys., LLC*,
827 F.3d 1325 (11th Cir. 2016) ...............5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...............3

*Bernal v. NRA Grp., LLC*,
318 F.R.D. 64 (N.D. Ill. 2016) ...............14

*Bonchon U.S.A., Inc. v. Aaron Allen & Assocs., LLC*,
2024 U.S. Dist. LEXIS 59066 (N.D. Ill. Mar. 30, 2024) ...............15

*Bradford-Scott Data Corp., Inc. v. Physician Computer Network, Inc.*,
136 F.3d 1156 (7th Cir. 1998) ...............12

*Burton v. Ghosh*,
961 F.3d 960 (7th Cir. 2020) ...............5, 6, 7

*Cheli v. Taylorville Cmty. Sch. Dist.*,
986 F.3d 1035 (7th Cir. 2021) ...............12

*Coinbase, Inc. v. Suski*,
602 U.S. 143 (2024) ............... *passim*

*Cont'l Cas. Co. v. LaSalle Re Ltd.*,
511 F. Supp. 2d 943 (N.D. Ill. 2007) ...............10

*Dowding v. Nationwide Mut. Ins. Co.*,
490 F. Supp. 3d 1291 (N.D. Ill. 2020) ...............19, 20

*Eike v. Allergan, Inc.*,
2014 U.S. Dist. LEXIS 34894 (S.D. Ill. Mar. 18, 2014) ...............20

*Farmers Auto. Ins. Ass'n v. St. Paul Mercury Ins. Co.*,
  482 F.3d 976 (7th Cir. 2007) ..................................................................................13

*Flaherty v. Clinique Labs. LLC*,
  2021 U.S. Dist. LEXIS 219455 (N.D. Ill. Nov. 15, 2021) ........................................18

*Gaines v. BDO USA, LLP*,
  663 F. Supp. 3d 821 (N.D. Ill. 2023) ......................................................................15

*Gilbert v. I.C. Sys.*,
  2021 U.S. Dist. LEXIS 16279 (N.D. Ill. Jan. 28, 2021) ...........................................4

*Hansen v United Airlines, Inc.*,
  2021 U.S. Dist. LEXIS 191918 (N.D. Ill. Oct. 5, 2021) ..........................................19

*In re Aqua Dots Prods. Liab. Litig.*,
  654 F.3d 748 (7th Cir. 2011) ..................................................................................16

*In re Stericycle, Inc.*,
  2017 U.S. Dist. LEXIS 21861 (N.D. Ill. Feb. 16, 2017) ..........................................14

*Jackson v. Jersey Cmty. Hosp.*,
  2023 U.S. Dist. LEXIS 174593 (S.D. Ill. Sep. 28, 2023) .........................................17

*Joseph v. TGI Friday's, Inc.*,
  2022 U.S. Dist. LEXIS 213506 (N.D. Ill. Nov. 28, 2022) ........................................18

*Kohen v. Pac. Inv. Mgmt. Co. LLC & PIMCO Funds*,
  571 F.3d 672 (7th Cir. 2009) ..................................................................................17

*Miles v. Am. Honda Motor Co.*,
  2017 U.S. Dist. LEXIS 174609 (N.D. Ill. Oct. 19, 2017) ........................................17

*Moehrl v. Nat'l Ass'n of Realtors*,
  2023 U.S. Dist. LEXIS 53299 (N.D. Ill. Mar. 29, 2023) .........................................19

*Oshana v. Coca-Cola Co.*,
  472 F.3d 506 (7th Cir. 2006) ..................................................................................17

*Reynolds v. CB Sports Bar, Inc.*,
  623 F.3d 1143 (7th Cir. 2010) ..................................................................................3

*Rodriguez v. Progressive Treatment Sols., LLC*,
  2026 U.S. Dist. LEXIS 52346 (N.D. Ill. Mar. 13, 2026) ....................................16, 17

*Rosario v. Livaditis*,
  963 F.2d 1013 (7th Cir. 1992) ............................................................................14, 15

*Rysewyk v. Sears Holdings Corp.*,
  2015 U.S. Dist. LEXIS 169124 (N.D. Ill. Dec. 18, 2015) ........................................18

iii

*Smith v. GC Servs. Ltd. P'ship*,
907 F.3d 495 (7th Cir. 2018) .......................................................................................................13

*Suski v. Coinbase, Inc.*,
55 F.4th 1227 (9th Cir. 2022) ....................................................................................................11

*Wallrich v. Samsung Elecs. Am., Inc.*,
106 F.4th 609 (7th Cir. 2024) .................................................................................................4, 13

*Weaver v. Champion Petfoods USA Inc.*,
3 F.4th 927 (7th Cir. 2021) ...........................................................................................................5

*WFC Commodities Corp. v. Linnco Futures Grp.*,
1998 U.S. Dist. LEXIS 18716 (N.D. Ill. Nov. 23, 1998) ............................................................11

*White v. United States*,
8 F.4th 547 (7th Cir. 2021) .........................................................................................................15

**Rules**

Fed. R. Civ. P. 5 .........................................................................................................................22

Fed. R. Civ. P. 15 .......................................................................................................................21

Fed. R. Civ. P. 23 ..................................................................................................................14, 19

**INTRODUCTION**

This case is about a company that promises consumers "complete coverage you can count on" and that they will "never pay for covered car repairs again," and then, when consumers file claims for coverage, delays for weeks or months and denies coverage without basis. Plaintiffs paid Endurance thousands of dollars for Vehicle Service Contracts and, in return, received what the First Amended Complaint ("FAC"), ECF 29 (cited herein as "¶_"), describes in detail as a pattern of pretextual claim denials. The FAC further alleges, and scores of consumer complaints confirm, that Endurance has been engaging in this conduct for at least a decade. This Court has already sustained Plaintiffs' core claims on the merits. In its prior Order, the Court found that "[P]laintiffs have pleaded their fraud allegations with sufficient particularity" based on "several specific misrepresentations" made by Endurance. ECF 25 at 38.

Endurance's renewed motion asks this Court to compel arbitration as to Rumpf and Boullie, and to dismiss or strike the class allegations. Each request should be denied.

As to Rumpf, the Court already denied Endurance's motion to compel arbitration, finding that Endurance "failed to show" that Rumpf assented to any arbitration agreement and that Endurance "had the opportunity to provide evidence to support its argument in reply—but did not do so—[and] has waived its ability to support that assertion." ECF 25 at 26. Endurance now seeks a second bite at the apple by submitting evidence it withheld the first time around.

As to Boullie, Endurance's evidence of assent is even weaker than the evidence this Court already found insufficient for Rumpf. Endurance submits a "screen capture" video that does not depict Boullie completing the quote form, contains an unexplained jump that omits the entry of basic identifying information, and does not show that Boullie was ever presented with the fine-print disclaimer linking to Endurance's website's Terms and Conditions ("T&C"). The static

1

webpage Endurance attaches as Exhibit B does not match the layout shown in the video. And the declarant on whom Endurance relies, Daniel Wilner, previously submitted assertions this Court found to be inconsistent with Endurance's own video evidence. ECF 25 at 23-26. Endurance has not carried its burden to show that Boullie assented to the website's T&C.

Even assuming, contrary to fact, that Boullie assented to the website Terms and Conditions, the arbitration provision in those terms was superseded by the dispute resolution provision in Boullie's Vehicle Service Contract ("VSC"). Under *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024), when parties have agreed to two contracts with conflicting arbitration provisions, a court must determine which contract governs. The T&C and VSC arbitration clauses irreconcilably conflict. Applying traditional contract principles, the later-in-time, more specific agreement (the VSC) superseded the T&C, and the VSC terms foreclose Endurance's attempt to compel arbitration.

Endurance's arguments for striking the class allegations are equally unavailing. The FAC addressed the deficiencies this Court identified by replacing the nationwide class with state-specific subclasses, differentiating between contract and fraud sub-classes, and alleging that the relevant portions of each VSC use "identical, or substantially similar, language." Endurance's remaining objections—that the classes sweep too broadly, that they include expired contracts, and that multi-state litigation is unmanageable—are either contradicted by the FAC's new allegations, including more than two dozen consumer complaints spanning at least a decade, or are premature questions better resolved after class discovery.

Accordingly, the Court should deny Endurance's motion in its entirety.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs are residents of Ohio, Michigan, Pennsylvania, Texas, New Jersey, Connecticut, and Massachusetts. ¶¶ 12, 26, 40, 55, 69, 86, 96. Each purchased a VSC for $2,500 to $6,500,

experienced covered mechanical issues, and submitted a claim that Endurance either partially denied, entirely denied, or refused to issue a decision on the claim at all. Plaintiffs allege that Endurance tricked them into purchasing worthless VSCs, causing thousands of dollars in additional out-of-pocket losses. ¶¶ 12-105.

The First Amended Complaint details Endurance's fraudulent scheme in selling and administering its VSCs. Endurance aggressively advertises "complete coverage you can count on," and promises consumers who pay thousands of dollars for a VSC that they will "never pay for covered car repairs again." ¶¶ 128, 131. But when the time comes for Endurance to provide the advertised coverage, it deploys a pattern of tactics to delay and deny claims. ¶¶ 143-164.

Plaintiffs Cooper, Kujawa, Rinella, Rumpf, and Wilder originally filed suit on March 19, 2025. Endurance moved to compel arbitration, to dismiss, and to strike class allegations. ECF 1, ECF 14. The Court granted the motion to compel arbitration as to Plaintiff Rinella, but denied the motion as to Cooper, Wilder, and Rumpf. ECF 25 at 43. The court determined that Plaintiffs Rinella, Kujawa, Wilder, and Cooper, but not Rumpf, are subject to class action waivers, and also dismissed Counts II and V of Plaintiffs' original complaint, with leave to amend. *Id.*

### LEGAL STANDARDS[1]

On a motion to dismiss, a court "construe[s] [the complaint] in the light most favorable to the nonmoving party, accept[s] well-pleaded facts as true, and draw[s] all inferences in her favor." *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[1] Citations omitted and emphasis added throughout, unless stated otherwise.

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). When asked to compel arbitration, the party seeking to compel arbitration bears the initial burden to show that an arbitration agreement exists. *Gilbert v. I.C. Sys.*, 2021 U.S. Dist. LEXIS 16279, at *5-6 (N.D. Ill. Jan. 28, 2021). If the movant meets this standard, the opposing party must identify a triable issue of fact on the purported arbitration agreement. *Id*. "Like summary judgment, the court views the evidence in the light most favorable to the non-moving party and draws reasonable inferences in its favor." *Id*.

## ARGUMENT

**I.      Endurance cannot compel Plaintiffs Rumpf or Boullie to arbitrate their claims.**

   **A.      This Court should deny Endurance's improper attempt to relitigate its motion to compel arbitration against Rumpf based on evidence Endurance chose not to rely upon previously.**

This Court has already decided whether Rumpf can be compelled to arbitrate by denying Endurance's previous motion, finding that Endurance "failed to show that... Rumpf assented to any arbitration agreement in Endurance's T&Cs through [her] website use" and that Endurance "had the opportunity to provide evidence to support its argument in reply—but did not do so— [and] has waived its ability to support that assertion." ECF 25 at 26. Endurance now seeks a second bite at the apple, dressing up the same failed argument with what it calls "additional context." ECF 32-07 ("Mot.") 3. But this is evidence Endurance chose not to submit when it had the chance. The Court should refuse to entertain this impermissible attempt to relitigate a fully adjudicated issue.

In the Seventh Circuit, a motion to compel arbitration is "akin" to "summary judgment," which "does not allow second chances." *Wallrich v. Samsung Elecs. Am., Inc.*, 106 F.4th 609, 619–20 (7th Cir. 2024). When a party has "the opportunity to present [its] evidence, and . . . fail[s] to do so," the party forfeits its chance. *Id.* Accordingly, a party "cannot lose a motion to compel arbitration for failure to prove that an arbitration agreement exists" and then demand "a second

4

bite at the apple—an opportunity to prove the agreement's existence" anew. *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016) (cited with approval in *Wallrich*); *see also Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 938 (7th Cir. 2021) ("Summary judgment is the proverbial put up or shut up moment in a lawsuit.").

Endurance had a full and fair opportunity to present evidence of Rumpf's purported assent during the first round of briefing, and this Court expressly found that Endurance "waived its ability to support that assertion." ECF 25 at 26. Endurance offers no explanation for why its current evidence was withheld from its first motion. Its renewed motion is precisely the kind of impermissible "second chance" that *Wallrich* forbids.

Nor can Endurance use Plaintiffs' FAC as a vehicle to relitigate the arbitration question. When an amended complaint does "not change the theory or scope of the case in a way relevant to the new defense," it does not justify an additional motion to compel arbitration. *Burton v. Ghosh*, 961 F.3d 960, 968 (7th Cir. 2020). Rumpf's individual factual allegations—her purchase of a VSC, her warranty claim, Endurance's delay and denial, and her resulting damages—are repeated verbatim from the original Complaint. *Compare* ECF 1, ¶¶ 55–68, *with* FAC ¶¶ 55–68. The FAC's substantive changes are limited to matters entirely unrelated to Rumpf's use of Endurance's website: the addition of two new plaintiffs (Boullie and Moore) FAC ¶¶ 86–105, the replacement of the national class with state-specific subclasses, *id.* ¶ 169, and two new state consumer-protection counts (Connecticut and Massachusetts) brought by the two new plaintiffs, *id.* ¶¶ 298–326 (Counts XI & XII). None of these changes alter the theory or scope of Rumpf's individual claims or raise new issues bearing on the enforceability of any purported arbitration agreement as to her. They do not relate to Rumpf. Endurance's motion to compel arbitration as to Rumpf should be denied.

**B.** **Endurance has not established that Boullie assented to its website's T&C.**

Endurance bears the initial burden of establishing that a valid arbitration agreement exists, which requires showing that Boullie assented to the terms of the Endurance website T&C. *See* ECF 25 at 7. This Court has held that, for a hybrid-wrap agreement like the one at issue, Endurance must demonstrate both that its website provided "reasonably conspicuous notice of the [the website's T&C] to which the consumer will be bound" and that "the consumer takes some action . . . that unambiguously manifests his or her assent to those terms." *Id*. at 26.

The evidence Endurance submits for Boullie's purported assent is virtually identical to the evidence this Court already found insufficient to establish Rumpf's assent, explaining:

> Endurance fails to show that the webpage that Rumpf was on where she clicked the "FREE Quote" button provided reasonably conspicuous notice of the T&Cs or that she unambiguously manifested her assent to those T&Cs by clicking the button. Indeed, as shown above, the video exhibit shows only a sentence fragment under the button. And the text in that sentence fragment neither provides a link to the T&Cs nor suggests that by clicking the "FREE Quote" button, Rumpf would be consenting to any T&Cs.

ECF 25 at 26. The video for Boullie is even more deficient as it does not contain so much as a "sentence fragment" depicting what actually appeared under the "FREE Quote" button. *See* ECF 32-2 (Boullie video "screen capture" exhibit).

Without evidence of what Boullie actually saw on his screen, Endurance has not carried its burden to show assent. *See* ECF 25 at 7, 23. Despite Mr. Wilner's Declaration stating that the T&C disclaimer appeared on the website when Boullie clicked "Get a FREE Quote," (ECF 32-1, ¶7), Endurance's video never shows Boullie being presented with the disclaimer or any fine print notifying him that clicking "Get a FREE Quote" would constitute acceptance of the T&C. ECF 32-2.

Endurance's evidentiary submissions are further undermined by significant reliability concerns. Mr. Wilner's prior Declaration contained assertions shown to be false, including that

6

Rumpf and Rinella "actively clicked 'I Accept' next to Endurance Warranty's Terms and Conditions before receiving a quote," (ECF 17 ¶¶ 4-5), and that "Cooper… agreed to the Endurance [website's] Terms and Conditions" (*id*. ¶ 7). *See* ECF 25 at 23 (noting the TrustedForm video of Cooper's interaction was inconsistent with Mr. Wilner's own evidence). The Boullie "screen capture" raises similar reliability and authentication concerns. Mr. Wilner avers that "the video replay does accurately show that Plaintiff Boullie accessed the web page as it existed at that time and entered his information when he submitted the request for a free quote." ECF 32-1, ¶ 9. But, unlike the video for Rumpf, the video does not show Boullie completing the form—at one point, the video jumps, omitting the typing and purported entry of any identifiers demonstrating this was even Boullie, including his name, zip code, phone number, and estimated mileage.

The discrepancies extend beyond the "screen capture" failing to show Boullie filling out the form as it purports to show. Mr. Wilner's Declaration states that the T&C disclaimer appeared on the website at the time Boullie clicked "Get a FREE Quote," (ECF 32-1, ¶ 7), but Endurance's video does not show that Boullie was ever presented with or viewed the disclaimer and the document attached as Exhibit B which purports to be "a true and accurate copy of the entire web page… which Plaintiff Boullie accessed on April 16, 2025, when he entered his vehicle information and clicked the 'Get a Free Quote' button," as it is not the same as the webpage shown in the Boullie "screen capture" video. ECF 32-1, ¶ 6. Exhibit B depicts a layout with a single orange banner across the top, over two side-by-side columns (one with a "GET YOUR FREE QUOTE" form and a second titled "PROTECT YOUR INVESTMENT"), and a blue footer containing Endurance's logo and certain disclaimers. *See* ECF 32-3. In contrast, the Boullie "screen capture" video shows only partial fields of the "GET YOUR FREE QUOTE" form column and the "PROTECT YOUR INVESTMENT" column, stacked vertically, as opposed to side-by-

side as depicted in Wilner's Exhibit B. These inconsistencies demonstrate that Endurance has not reliably established what Boullie actually was presented with on his device.

These evidentiary gaps are fatal. Endurance bears the burden of proving assent, and a declarant's assertion about what a website generally displayed cannot substitute for evidence of what this particular consumer actually encountered. Accordingly, because Endurance has shown that Boullie's website provided conspicuous notice of T&C, or that he unambiguously manifested assent, the Court should deny the motion to compel arbitration as to Boullie. *See* ECF 25 at 26 ("[T]he [C]ourt cannot accept [Defendants'] suggestion" that the website "shown to Rinella was shown to Rumpf.").

### C. The Endurance website's T&C arbitration provision was superseded by the arbitration clause contained in the VSCs.

Even assuming *arguendo* that Boullie and Rumpf assented to the website's T&C, the Court should deny the motion to compel arbitration, because two conflicting agreements govern the parties' dispute resolution obligations, and the later-in-time agreement, the VSCs, superseded the earlier website T&C.[2] Under the Supreme Court's unanimous decision in *Coinbase, Inc. v. Suski*, 602 U.S. 143, 145 (2024), where parties have agreed to two contracts containing conflicting arbitration provisions, "a court must decide which contract governs." *Id*. at 152. Here, the VSC that Boullie subsequently executed contains an arbitration provision that fundamentally conflicts with the website T&C's arbitration clause. Applying traditional contract principles, the VSC controls, and its terms foreclose Endurance's attempt to compel arbitration.

---

[2] Plaintiffs' primary argument as to Rumpf remains that Endurance's renewed motion is barred because this Court already denied that motion and found that Endurance waived its ability to support its assertion of Rumpf's assent. Dkt. 25 at 26; *see supra* § I.A. Plaintiffs include Rumpf in this *Coinbase* analysis as an alternative argument. Even if the Court were to revisit the assent question and find that Rumpf did assent to the website T&C, the arbitration provision in those terms was superseded by the materially different dispute resolution provision in Rumpf's VSC. This alternative argument does not concede assent; it demonstrates that Endurance's motion fails at every level of analysis.

1. ***The VSC and T&C contain irreconcilably conflicting arbitration provisions.***

Endurance contends that Boullie agreed to Endurance's website T&C by clicking the "Get a FREE Quote" button on Endurance's website on April 16, 2025, thereby assenting to a "hybrid-wrap" agreement. The website T&C contains a "Dispute Resolution" clause providing that "[a]ny controversy, claim or dispute arising between the parties" shall be "solely and exclusively resolved" through specified procedures, and that "either party may initiate binding arbitration" through the American Arbitration Association ("AAA") under consumer arbitration rules in Cook County, Illinois. ECF 32-6 at 5. After obtaining a quote through the website, Boullie subsequently purchased a VSC from Endurance. That VSC, the operative contract governing the substantive service relationship between consumers like Boullie and Endurance, contains its own, materially different dispute resolution provision. The VSC's Section IX.B, titled "Alternative Dispute Resolution," provides:

> We reserve the right, in the interests of efficient and judicious resolution of disputes, to demand that ***any claim, complaint or demand*** initiated by You relating to the Coverage provided under this Contract be settled by an alternative dispute resolution procedure ***before a recognized and/or accredited third-party organization of Our choosing***, including, but not limited to, arbitration, mediation, and/or conciliation, with the cost of such alternative dispute resolution to be paid entirely by Us. ***Should We elect to pursue alternative dispute resolution***….

ECF 29-6 at 12 (PageID #:728).

These two agreements conflict in at least two fundamental respects. First, the website T&C provides that "either party may initiate binding arbitration," granting both Boullie, Rumpf, and Endurance the right to compel arbitration. ECF 32-6 at 5. By contrast, the arbitration clauses in Boullie's and Rumpf's VSCs provide Endurance the sole right to compel arbitration. *See* ECF 29-6 at 12 (PageID #:728). Second, the website T&C specifies AAA consumer arbitration rules in Cook County, Illinois before a single neutral arbitrator, while the VSCs' arbitration clause gives

9

Endurance sole discretion to select the method (arbitration or mediation), the forum, and the organization—unconstrained by any specified rules or venue. ECF 32-6 at 5; ECF 29-6 at 12 (PageID #:728). This Court previously found this type of unconstrained discretion substantively unconscionable in the identical provisions of Cooper's and Wilder's VSCs. ECF 25 at 17. The two provisions thus establish fundamentally incompatible frameworks for initiating dispute resolution that cannot coexist.

### 2. *Under* Coinbase*, the Court must resolve the conflicting agreements*

In *Coinbase*, the Supreme Court held that when "parties have agreed to two contracts— one sending arbitrability disputes to arbitration, and the other either explicitly or implicitly sending arbitrability disputes to the courts—a court must decide which contract governs." 602 U.S. at 152. Like the users in *Coinbase* who first agreed to a User Agreement with a mandatory arbitration and delegation clause and later entered a sweepstakes agreement with a forum selection clause directing disputes to California courts, Boullie and Rumpf first encountered the website T&C (containing an arbitration clause) and later executed a VSC with a materially different dispute resolution framework. The threshold question of which agreement controls is inherently a judicial one. *See Cont'l Cas. Co. v. LaSalle Re Ltd.*, 511 F. Supp. 2d 943, 949 (N.D. Ill. 2007) ("[W]here there are multiple contracts between the parties and there is a question as to the parties' intent, it is for the district court, not the arbitrator, to decide whether the earlier arbitration clause has been superseded by a subsequent agreement.").

### 3. *The VSC superseded the website T&C under traditional contract principles*

Endurance's implicit position here is that Boullie and Rumpf should be compelled to arbitrate under the website T&C, irrespective of the VSC's conflicting terms. It is wrong. Applying traditional contract principles, the VSC supersedes the website T&C with respect to dispute resolution for claims arising out of the VSC. Several well-established doctrines support this

conclusion.

Plaintiffs first encountered the website T&C when they requested quotes. They subsequently purchased VSCs containing their own dispute resolution framework. Under fundamental principles of contract interpretation, a later agreement on the same subject matter between the same parties supersedes an earlier one to the extent of any conflict. It is well settled that when a subsequent contract relates to the same subject matter and does not contain any intention to incorporate the first agreement, the subsequent contract controls. *WFC Commodities Corp. v. Linnco Futures Grp.*, 1998 U.S. Dist. LEXIS 18716, at \*12 (N.D. Ill. Nov. 23, 1998) (denying motion to compel arbitration; finding first-in-time contracts' arbitration clause was superseded by subsequent contracts' forum selection clause and that "it is enough to find that the contracts are on the same subject matter and that the [subsequent] contracts are complete on their faces."); *Suski v. Coinbase, Inc.*, 55 F.4th 1227, 1231 (9th Cir. 2022), *aff'd*, 602 U.S. 143 (2024) ("'[T]he general rule is that when parties enter into a second contract dealing with the same subject matter… the latter contract prevails to the extent they are inconsistent.'").

The VSC is the later, more specific agreement. The website T&C is a general agreement governing use of Endurance's website, which Endurance argues encompasses all of Plaintiffs' claims here. The VSC, by contrast, is the specific contract governing the parties' relationship. Where a general and a specific contract conflict, the specific contract controls. *C.f. Aeroground, Inc. v. CenterPoint Properties Tr.*, 738 F.3d 810, 816 (7th Cir. 2013) (Under Illinois law, "[t]he more specific provision of a contract governs where it arguably conflicts with a more general provision."). A preliminary website T&C, executed to obtain a free price quote, cannot override the specific dispute resolution terms in the operative contract the parties actually executed.

*Allen v. Travel Guard Grp., Inc.*, 683 F. Supp. 3d 1164 (W.D. Wash. 2023) is instructive.

11

In *Allen*, the court applied the Seventh Circuit's analysis in *Bradford-Scott Data Corp., Inc. v. Physician Computer Network, Inc.*, 136 F.3d 1156 (7th Cir. 1998), in addressing a situation where an earlier agreement (a website's terms of use) contained a broad arbitration clause and a later agreement (insurance policies) required the parties to "mutually accept arbitration" before claims could be arbitrated. *Id.* at 1167. The *Allen* court held that the later agreement's arbitration clause "controls" because the clauses "directly conflict" and "fundamental principles of contract interpretation dictate only one reasonable interpretation." *Id* at 1171-1172. So too here, the VSC's arbitration provision, which grants Endurance alone the unilateral right to select an alternative dispute resolution method of its choosing, unconstrained by any specified rules, forum, or procedure, "flatly contradicts" the website T&C's defined AAA arbitration framework that either party may invoke, and the later provision must control.

### 4. *The VSCs' arbitration provision cannot be overridden by the website T&C.*

Endurance cannot circumvent the VSCs' (unconscionable) arbitration provision by reaching back to the website T&C. The federal policy favoring arbitration, which Endurance invokes (Mot. 6, 7), does not authorize a court to force arbitration under one contract when the parties' later, more specific agreement establishes a different dispute resolution framework. To the contrary, arbitration is fundamentally "a matter of contract and consent." *Coinbase*, 602 U.S. at 145. Allowing the website T&C to override the VSC's ADR provision would render the VSC's dispute resolution clause a nullity—an outcome prohibited by Illinois law. *See Cheli v. Taylorville Cmty. Sch. Dist.*, 986 F.3d 1035, 1041 (7th Cir. 2021) ("a construction should be adopted, if possible, which ascribes meaning to every clause, phrase and word used").

If the website T&C's arbitration clause could override the VSC's ADR provision, the entire dispute resolution section of the VSC would serve no purpose. Endurance drafted both agreements

(*Farmers Auto. Ins. Ass'n v. St. Paul Mercury Ins.* Co., 482 F.3d 976, 977 (7th Cir. 2007) (Illinois applies *contra proferentum* which "requires that contracts (especially insurance contracts), if ambiguous, be construed against the drafter")), and chose to include a distinct ADR framework in the VSC; it cannot now disregard its own contract terms in favor of a prior, general website agreement.

**II.      Plaintiffs Boullie and Rumpf may litigate their claims on a classwide basis.**

Endurance argues that "Boullie and Rumpf waived their ability to participate in class litigation because they, like Rinella, are subject to the Endurance Website's [T&C], which include a valid and enforceable a class action waiver." ECF 32-07 at 8. This argument fails for the same reasons discussed above. First, Endurance has not carried its burden to show that Boullie and Rumpf assented to the Endurance website's T&C. *Supra* § I.A, B. ECF 25 at 29 ("the court has already determined that Endurance has failed to show that either Rumpf… w[as] subject to Endurance's T&Cs. The court thus denies the motion as to Rumpf… to the extent it is based on Endurance's T&Cs"). Second, even if assent were found (which it should not), the website T&Cs were superseded by Boullie's and Rumpf's VSC. *Supra* § I.C. Boullie's VSC does not contain a class waiver. ECF 29-6 at 12, PageID #:728. As to Rumpf, Endurance waived any right to enforce the class waiver provision in her VSC by failing to raise the argument in its initial motion—as well as its renewed motion, which improperly seeks to relitigate the same issues and cannot revise a waived and/or forfeited argument. *Wallrich*, 106 F.4th at 619–20; *c.f. Smith v. GC Servs. Ltd. P'ship*, 907 F.3d 495, 499-502 (7th Cir. 2018) ("[T]he arbitration agreement also included a waiver of the right to bring a class action suit. If GC Services waived any right to arbitrate, the company necessarily waived any right to oppose class certification premised on the agreement."). Accordingly, the Court should deny Endurance's motion insofar as it seeks to compel Boullie and Rumpf to litigate their claims on a class-wide basis.

### III. Plaintiffs' Class Definition is proper.

Ignoring the newly added allegations, Endurance asserts that "Plaintiffs' proposed subclasses do not satisfy Fed. R. Civ. P. 23's requirements and, therefore, the class allegations should be dismissed." Mot. 11. Endurance contends that Plaintiffs' amended class definitions "do not meaningfully address the deficiencies" in the original complaint. But Endurance's attempt to analyze the amended class definitions in isolation and ignore key additions to the FAC is fatal to their arguments.

First, Endurance argues that the proposed classes still "sweep in multiple versions of the VSC." *Id.* at 11, 12. This is true; the FAC acknowledges that Endurance offers six different protection plans, and the class definitions are inclusive of all of them. ¶ 116. Critically, however, the FAC also alleges that the relevant portions of each of the six VSCs use "identical, or substantially similar, language." *See, e.g.*, ¶¶ 152, 160, 163. Moreover, Rule 23 does not require every member of the proposed class to have purchased an identical VSC. *See In re Stericycle, Inc.*, 2017 U.S. Dist. LEXIS 21861, *23 (N.D. Ill. Feb. 16, 2017) (finding commonality where the relevant portion of each class member's contract contained "similar contract language").[3] In *Stericycle*, the defendant argued that "plaintiffs err in their assertion that Stericycle uses boilerplate contract language, arguing that its contracts vary greatly." *Id.* At class certification, the court rejected that argument and held "[a]ny differences among some of its contracts to which Stericycle points either are inconsequential or are outliers that will eliminate some individual members from the class. Any argument that those smaller customers all negotiate contracts that result in

---

[3] *See also Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 74 (N.D. Ill. 2016) (rejecting defendants argument that differences in class members' agreements destroy commonality) (citing R*osario v. Livaditis*, 963 F.2d 1013, 1017-18 (7th Cir. 1992) (explaining that "some factual variation among the class grievances will not defeat a class action" because a "common nucleus of operative fact" is typically sufficient to satisfy commonality)).

significant differences goes against the weight of the evidence." *Id.* Here, the parties have not yet entered discovery, but Endurance's failure to rebut Plaintiffs' assertions that the VSCs use substantially similar language is fatal.[4]

Next, Endurance argues that the proposed classes "remain open-ended, reaching back to include contracts that have been expired for years and predate the alleged wrongdoing." Mot. 11, 12. Endurance again ignores the additions to the FAC, which includes more than two dozen examples of publicly available customer complaints that show Endurance has been consistently failing to honor its VSCs going back at least a decade. ¶ 166. As such, Endurance's contention that the class definitions "include contracts that have been expired for years and predate the alleged wrongdoing" is wrong and, at best, a disputed fact issue that is not suitable for resolution on the pleadings. *See, e.g.*, *Bonchon U.S.A., Inc. v. Aaron Allen & Assocs., LLC*, 2024 U.S. Dist. LEXIS 59066, at *15 (N.D. Ill. Mar. 30, 2024) (determining whether a contract has been breached is a question of fact).

Endurance also argues that the proposed State Fraud Sub-Classes and the Injunctive Relief Sub-Classes "do not limit the sub-class to residents of these states who purchased a VSC from Endurance." Mot. 11. But at the motion to dismiss stage, a court must "draw all reasonable inferences in the plaintiff's favor." *Gaines v. BDO USA, LLP*, 663 F. Supp. 3d 821, 826 (N.D. Ill. 2023). These classes are limited to individuals who purchased a VSC from Endurance in those states.[5] Moreover, Endurance plainly understands that each of the Plaintiffs entered into their VSCs with Endurance in their home states, as their addresses appear on the VSCs.

---

[4] Arguments raised for the first time in a reply brief are waived because they leave no chance to respond. *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021)

[5] Plaintiffs also reserved the right to "modify, change, or expand the various class definitions set forth above based on discovery and further investigation." ¶ 169.

Endurance also argues that the State Fraud Sub-Classes and the Injunctive Relief Sub-Classes could apply to "individuals who either never submitted a claim or only submitted claims where coverage was provided in full." Mot. 11, 12. While the State-Contract Sub-Classes are limited to persons who had claims denied, the injury for the Fraud Sub-Classes occurred at the point of purchase. In *In re Aqua Dots Prods. Liab. Litig.*, plaintiffs brought class action claims against a toy company for selling brightly colored beads made of a chemical that, if ingested, could make children seriously ill. On interlocutory appeal, the Seventh Circuit addressed plaintiffs' standing to bring a class action against a toy company. Defendant argued that plaintiffs lacked standing because "none of the plaintiffs (or their children) was injured by swallowing the beads." 654 F.3d 748, 751 (7th Cir. 2011). The court of appeals rejected this argument: "The plaintiffs' loss is financial: they paid more for the toys than they would have, had they known of the risks the beads posed to children. A financial injury creates standing." *Id. See also*, *Rodriguez v. Progressive Treatment Sols., LLC*, 2026 U.S. Dist. LEXIS 52346, *8-9 (N.D. Ill. Mar. 13, 2026) (applying *In re Aqua Dots* and finding that a financial injury is sufficient to establish Article III standing).

Here, Plaintiffs allege that they were "fraudulently induced to purchase Vehicle Service Contracts at inflated prices." ¶ 214. Had Plaintiffs known of the facts misrepresented, concealed, and omitted by Endurance, they "would not have purchased Vehicle Service Contracts or would have paid substantially less for them." ¶¶ 23, 37, 52, 66, 83, 94, 104, 200, 214. Plaintiffs allege that the State Fraud Sub-Classes suffered a financial injury that occurred at the point of purchase; thus, whether Endurance separately breached their contracts is not relevant to the fraud claims. Similarly, some members of the Injunctive Relief Sub-Classes may not have suffered a breach of contract, but they were injured at the point of sale and are entitled to injunctive relief requiring

16

Endurance to correct the advertising and marketing practices that induced Plaintiffs and class members to purchase the VSCs.

Accordingly, each of the proposed class definitions remedy the Court's prior concerns. The State Contract Sub-Classes require that putative class members "had their claim denied due to a Pre-Existing Condition Issue, Maintenance Issue, Labor Rate Issue, or Eligible Component Issue." ¶ 169. The State Fraud Sub-Classes and Injunctive Relief Classes simply require a purchase of a VSC, because each putative class member overpaid at the time of purchase and injunctive relief is appropriate to remedy Endurance's business practices. *Id.* Thus, the class definitions in the FAC are not "facially and inherently deficient" such that dismissal is justified at this stage of litigation. *Miles v. Am. Honda Motor Co.*, 2017 U.S. Dist. LEXIS 174609, *12 (N.D. Ill. Oct. 19, 2017).

Contrary to Endurance's assertion, *Kohen v. Pac. Inv. Mgmt. Co. LLC & PIMCO Funds*, 571 F.3d 672 (7th Cir. 2009) does not hold that an overbroad class definition requires "dismissal of the complaint as a matter of law." Mot. 12. In affirming the district court's decision granting class certification (and not ruling on a motion to dismiss a complaint), the Seventh Circuit stated that the possibility a class will "include persons who have not been injured . . . does not preclude class certification." *Kohen,* at 677.[6] As such, *Kohen* actually supports Plaintiffs' class definitions. Moreover, as the Seventh Circuit recognized, the class definition could be narrowed if it was overbroad. *Id.* at 678. Plaintiffs can do so if necessary after discovery. *See Jackson v. Jersey Cmty. Hosp.*, 2023 U.S. Dist. LEXIS 174593, at *16 (S.D. Ill. Sep. 28, 2023) ("Before seeking certification, the class definition can be shaped and narrowed with the benefit of discovery. The Seventh Circuit recognizes that defining a class so as to avoid being over or under inclusive is

---

[6] Similarly, in *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006), the Seventh Circuit reviewed a class certification decision involving Coca-Cola's use of saccharin. The court found that some of the class may not have been deceived and purchased it because it contained saccharin. The evidentiary issues in *Oshana* do not support striking Plaintiffs' class allegations on the pleadings.

17

more of an art than a science. This problem can, and typically should be, solved by refining the class definition rather than denying class certification, or striking the class allegations.").

Finally, Endurance argues that the court should dismiss Plaintiffs' class allegations because applying the laws of "seven different states for claims based on breach of contract, unjust enrichment, and state-specific statutory claims" is "unmanageable." Mot. 12. At class certification, Plaintiffs will propose a trial plan that addresses manageability. *See Flaherty v. Clinique Labs. LLC*, 2021 U.S. Dist. LEXIS 219455, at *21 (N.D. Ill. Nov. 15, 2021) ("Because a choice of law analysis is premature, we cannot rule out the possibility that there will be no material conflicts of laws or that, if there are, state-specific subclasses may be a manageable alternative in the event that certifying a national class proves unworkable."). "[C]ourts in this district have largely declined to strike nationwide class allegations at the pleading stage where a party argued that a variation in state laws made a nationwide class impracticable." *Joseph v. TGI Friday's, Inc.*, 2022 U.S. Dist. LEXIS 213506, at *24 (N.D. Ill. Nov. 28, 2022). Endurance simply contends the seven states is too many but fails to establish why. *Rysewyk v. Sears Holdings Corp.*, 2015 U.S. Dist. LEXIS 169124, at *25 (N.D. Ill. Dec. 18, 2015) (refusing to strike class allegations as inherently unmanageable where defendants did not show "specific impediments" to a multistate class even if "Plaintiffs might not carry their burdens at class certification"). Endurance's argument should be rejected.

**IV.    Plaintiffs Moore, Rumpf, and Boullie are adequate Class Representatives.**

Endurance argues that Plaintiffs' class allegations fail because their claims lack an adequate representative under Fed. R. Civ. P. 23(a)(4).[7] Mot. 13. Endurance asserts that Plaintiffs

---

[7] Plaintiffs ask that the class allegations brought by Plaintiffs Cooper, Kujawa, Rinella, and Wilder be dismissed without prejudice, so that Plaintiffs may amend to add new parties.

Rumpf and Boullie waived their right to participate in a class action. *Id*. For reasons explained above, Rumpf and Boullie are not subject to class waivers or arbitration agreements.

As to Moore, Endurance argues that "he lacks commonality" and cannot be an adequate representative for the State Contract Sub-Class.[8] Mot. 14. Endurance's sole argument on this point is that the FAC defines the State Contract Sub-Classes as individuals who purchased a VSC through Endurance and "had their claim denied due to a Pre-Existing Condition Issue, Maintenance Issue, Labor Rate Issue, or Eligible Component Issue." ¶ 169. Moore alleges that Endurance denied his claim due to an Eligible Component Issue, and Endurance argues that Moore is therefore "not an adequate representative for the Pre-Existing Condition Issue, Maintenance Issues, or Labor Rate Issue." Mot. 14.

At this stage of litigation, weighing "questions of law or fact common to the class is premature." *Hansen v United Airlines, Inc.*, 2021 U.S. Dist. LEXIS 191918, *13 (N.D. Ill. Oct. 5, 2021). While a court may dismiss class allegations at the pleading stage, it should do so "only where the pleadings are facially defective or inherently deficient." *Dowding v. Nationwide Mut. Ins. Co.*, 490 F. Supp. 3d 1291, 1298 (N.D. Ill. 2020). "Given that plaintiff has not yet had the benefit of class discovery, [Endurance] bears the burden of proving that the proposed class is not certifiable." *Id.* Endurance has not met its burden of proof here.

Rule 23(a)(2) requires that "there are questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2). This is not a high standard; "even a single common question will do." *Moehrl v. Nat'l Ass'n of Realtors*, 2023 U.S. Dist. LEXIS 53299 at *42 (N.D. Ill. Mar. 29, 2023). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement… and is typically manifest where . . . the defendants have engaged in standardized conduct toward

---

[8] Endurance does not contend that Plaintiff Moore cannot represent the proposed Massachusetts State Fraud Sub-Class.

members of the proposed class." *Am. Council of the Blind of Metro. Chi. V. City of Chicago*, 589 F. Supp. 3d 904, 908 (N.D. Ill. 2022).

Here, the FAC alleges that Endurance consistently violates four terms of its VSCs. ¶¶ 148-164. Plaintiffs allege that the VSCs are all substantially similar, and at bottom, each of the breaches are substantially similar: Plaintiffs allege that Endurance improperly uses Pre-Existing Condition Issues, Maintenance Issues, Labor Rate Issues, or Eligible Component Issues as pretextual denials to avoid paying valid claims. ¶¶ 149-169. Each leads to a denied claim. Endurance cites no cases supporting its argument—unsurprisingly, as this is a question for class certification, not the pleadings. *Eike v. Allergan, Inc.*, 2014 U.S. Dist. LEXIS 34894, at *12 (S.D. Ill. Mar. 18, 2014) ("Furthermore, plaintiffs' claims are premised on their seeking to represent classes of consumers who bought and used similar products from these companies. They need not have used every prescription eye drop manufactured by every defendant. The issue of substantial similarity is one for class certification review, not an issue that the Court will take up on a motion to dismiss."). The core allegation is Endurance's pattern of improperly denying claims. ¶¶ 143-147.

"[G]iven that the burden on [Endurance] is so high at this stage and that Plaintiff has not yet had the benefit of class discovery by which [h]e may be able to refine [his] class allegations" this Court should deny Endurance's motion to strike the class allegations. *Dowding*, 490 F. Supp. 3d. at 1299.

## CONCLUSION

Plaintiffs respectfully request that the Court deny Endurance's renewed Motion. If the Court determines that the Complaint is deficient in any manner, Plaintiffs respectfully request leave to amend pursuant to Fed. R. Civ. P. 15(a)(2).

20

Dated: May 5, 2026       By:   */s/ Jonathan D. Lindenfeld*

Elizabeth A. Fegan
**FEGAN SCOTT LLC**
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Phone: 312.741.1019
Fax: 312.264.0100
beth@feganscott.com

Jonathan D. Lindenfeld (*Pro Hac Vice*)
**FEGAN SCOTT LLC**
305 Broadway, 7th Floor
New York, NY 10007
Phone: 332.216.2101
Fax: 312.264.0100
jonathan@feganscott.com

Joseph G. Sauder
Matthew D. Schelkopf
Joseph B. Kenney (*Pro Hac Vice*)
**SAUDER SCHELKOPF LLC**
1109 Lancaster Avenue
Berwyn, PA 19312
Phone: (888) 711-9975
Fax: (610) 421-1326
jgs@sstriallawyers.com
mds@sstriallawyers.com
jbk@sstriallawyers.com

21

**CERTIFICATE OF SERVICE**

I hereby certify that the above Plaintiffs' Plaintiffs' Response in Opposition to Defendants Endurance Dealer Services, LLC and Endurance Warranty Services, LLC's Motion to Compel Arbitration and Partially Dismiss the First Amended Complaint was served on all parties in accordance with Fed. R. Civ. P. 5 and any applicable local rules of civil procedure.

Dated: May 5, 2026                By:   _/s/ Jonathan D. Lindenfeld_

                                       Jonathan D. Lindenfeld (*Pro Hac Vice*)
                                       **FEGAN SCOTT LLC**
                                       305 Broadway, 7th Floor
                                       New York, NY 10007
                                       Phone: 332.216.2101
                                       Fax: 312.264.0100
                                       jonathan@feganscott.com